1

2

3

4

5

6

**UNITED STATES DISTRICT COURTS**
**FOR THE**
**CENTRAL DISTRICT OF CALIFORNIA**
**NORTHERN DISTRICT OF CALIFORNIA**
**DISTRICT OF MAINE**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DISTRICT OF NORTH CAROLINA**
**EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| 7 | **UNITED STATES OF AMERICA,** | ) **Case No.** | **(C.D. Cal.)** |
| 8 | | ) **Case No.** | **(N.D. Cal.)** |
| 9 | **v.** | ) **Case No.** | **(D. Me.)** |
| 10 | **OVERSEAS SHIPHOLDING GROUP, INC.,** | ) **Case No.** | **(D. Mass.)** |
| 11 | **Defendant.** | ) **Case No.** | **(E.D. N.C.)** |
| 12 | | ) **Case No.** | **(E.D. Tex.)** |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### PLEA AGREEMENT

The United States of America, by and through the United States Attorneys for the Central District of California, the Northern District of California, the District of Maine, the District of Massachusetts, the Eastern District of North Carolina, the Eastern District of Texas, and the Environmental Crimes Section of the United States Department of Justice (collectively referred to herein as "the United States" or "the government"), and the Defendant OVERSEAS SHIPHOLDING GROUP, INC. (referred to herein as "Defendant"), enter into the following Plea Agreement, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1.      Waiver of Indictment and Guilty Pleas. Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States by Informations in the Central District of California, the Northern District of California, the District of Maine, the District of Massachusetts, the Eastern District of North Carolina, and the Eastern District of Texas. Defendant also agrees to plead guilty to Counts One and Two of the Second Superseding Indictment in United States v. Kun Jun Jho and Overseas Shipholding Group, Inc., Criminal Number 1:06-CR-65 (Judge Heartfield), in the Eastern District of Texas. Defendant expressly and unequivocally admits that, by and

1   through its employees acting on behalf of and for the benefit of the corporation, it in fact
2   knowingly, intentionally and willfully as described hereafter committed the crimes charged in
3   the referenced Informations and the referenced counts of the Second Superseding Indictment,
4   and is in fact guilty of those offenses.  By entering these guilty pleas, Defendant  hereby waives
5   all objections to the form of the charging documents, admits that it is in fact guilty of the
6   offenses as set forth in the Informations and the referenced counts of the Second Superseding
7   Indictment and that the Joint Factual Statement dated this same day and included as Attachment
8   A to this Plea Agreement is an accurate statement of its criminal conduct.  Upon the filing of the
9   Informations in the Central District of California, the Northern District of California, the District
10  of Maine and the Eastern District of North Carolina, the parties agree to seek concurrently the
11  transfer of those Informations, pursuant to the provisions of Rule 20 of the Federal Rules of
12  Criminal Procedure, to the District of Massachusetts for entry of the guilty pleas and for
13  sentencing in that district.  The pleas of guilty in the District of Massachusetts and in the Eastern
14  District of Texas are to be entered by Defendant through a senior corporate officer acceptable to
15  the government authorized by resolution of the Defendant's Board of Directors to enter pleas of
16  guilty on Defendant's behalf and to appear and represent Defendant at sentencing in both the
17  District of Massachusetts and the Eastern District of Texas.

18         2.      The Charges.  Defendant  agrees to enter pleas of guilty in the District of
19  Massachusetts to the following counts of the Informations filed in the Central District of
20  California, the Northern District of California, the District of Maine, the District of
21  Massachusetts and the Eastern District of North Carolina which were committed by Defendant
22  by and through its employees acting on behalf of and for the benefit of the corporation.  The
23  Defendant also agrees to enter pleas of guilty in the Eastern District of Texas to Counts One and
24  Two of the Second Superseding Indictment pending in that district and to the following counts of
25  the Information filed in that district which were committed by Defendant by and through its
26  employees acting on behalf of and for the benefit of the corporation.  The Defendant further
27  agrees to enter additional pleas of guilty in the Eastern District of Texas as set forth in paragraph
28  2(F)(3), *infra*.

1    A.    Central District of California

2          Count One (*M/T Neptune*) and Count Three (*M/T Cabo Hellas*): Knowingly

3    failing to maintain an Oil Record Book in which all disposals of oil residue and discharges

4    overboard of oily mixtures, slops from bilges and bilge water that accumulated in machinery

5    spaces were fully recorded in violation of Title 33, United States Code, Section 1908(a) and Title

6    33, Code of Federal Regulation, Section 151.25.

7          Count Two (*M/T Neptune*): Knowingly and willfully making and using a false

8    writing or document in violation of Title 18, United States Code, Section 1001.

9    B.    Northern District of California

10          Count One (*M/T Overseas Cleliamar*): Knowingly failing to maintain an Oil

11   Record Book in which all disposals by transfer bilge water that accumulated in machinery spaces

12   were fully recorded in violation of Title 33, United States Code, Section 1908(a) and Title 33,

13   Code of Federal Regulation, Section 151.25.

14   C.    District of Maine

15          Count One (*M/T Overseas Shirley*): Knowingly and willfully entering into a

16   conspiracy to make and use false writings, in violation of Title 18, United States Code, Section

17   1001, and to fail to maintain an Oil Record Book in which all disposals of oily wastes were fully

18   recorded, in violation of Title 33, United States Code, Section 1908(a) and Title 33, Code of

19   Federal Regulation, Section 151.25, and to obstruct an agency proceeding, in violation of Title

20   18, United States Code, Section 1505, all in violation of Title 18, United States Code, Section

21   371.

22          Counts Two and Three (*M/T Overseas Shirley*), Count Four (*M/T Rebecca*),

23   Count Five (*M/T Pacific Sapphire*), Counts Six and Seven (*M/T Uranus*) and Count Eight (*M/T

24   Ania*): Knowingly failing to maintain an Oil Record Book in which all disposals of oil residue

25   and discharges overboard of oily mixtures, slops from bilges and bilge water that accumulated in

26   machinery spaces were fully recorded in violation of Title 33, United States Code, Section

27   1908(a) and Title 33, Code of Federal Regulation, Section 151.25.

28          Count Nine (*M/T Overseas Portland*): Knowingly failing to maintain an Oil Record Book

PLEA AGREEMENT/
UNITED STATES OF AMERICA v. OSG - 3

1 in which any failure of the oil discharge monitoring and control system was accurately recorded
2 in violation of Title 33, United States Code, Section 1908(a) and Title 33, Code of Federal
3 Regulation, Section 151.25.

4       D.    District of Massachusetts

5          Count One (*M/T Uranus*) and Count Five (*M/T Neptune*): Knowingly and
6 willfully entering into a conspiracy to make and use false writings, in violation of Title 18,
7 United States Code, Section 1001, to fail to maintain an Oil Record Book in which all disposals
8 of oily wastes were fully recorded, in violation of Title 33, United States Code, Section 1908(a)
9 and Title 33, Code of Federal Regulation, Section 151.25, and to obstruct an agency proceeding,
10 in violation of Title 18, United States Code, Section 1505, all in violation of Title 18, United
11 States Code, Section 371.

12          Count Two (*M/T Uranus*) and Count Six (*M/T Neptune*): Knowingly and willfully
13 making and using a false writing or document in violation of Title 18, United States Code,
14 Section 1001.

15          Count Three (*M/T Uranus*): Obstruction of an agency proceeding, in violation of
16 Title 18, United States Code, Section 1505.

17          Count Four (*M/T Uranus*), Count Seven (*M/T Neptune*), and Count Eight (*M/T*
18 *Vega*): Knowingly failing to maintain an Oil Record Book in which all disposals of oil residue
19 and discharges overboard of oily mixtures, slops from bilges and bilge water that accumulated in
20 machinery spaces were fully recorded in violation of Title 33, United States Code, Section
21 1908(a) and Title 33, Code of Federal Regulation, Section 151.25.

22       E.    Eastern District of North Carolina

23          Count One (*M/T Neptune*): Knowingly discharging a harmful quantity of oil
24 which may affect natural resources belonging to the United States, in violation of Title 33,
25 United States Code, Sections 1319(c)(2) and 1321(b)(3). The Defendant expressly agrees to
26 waive venue and to consent to the filing of this charge in the Eastern District of North Carolina.
27          Count Two (*M/T Alcesmar*): Knowingly and willfully making and using a false
28 writing or document in violation of Title 18, United States Code, Section 1001.

1  |   Count Three (*M/T Alcesmar*): Knowingly failing to maintain an Oil Record Book

2  | in which all disposals otherwise by transfer of bilge water that accumulated in machinery spaces

3  | and/or oily mixtures were fully recorded in violation of Title 33, United States Code, Section

4  | 1908(a) and Title 33, Code of Federal Regulation, Section 151.25.

5  |   F.   Eastern District of Texas

6  |       (1)   Second Superseding Indictment (*M/T Pacific Ruby*)

7  |   Count One: Knowingly and willfully entering into a conspiracy to make and use

8  | false writings, in violation of Title 18, United States Code, Section 1001, and to knowingly alter

9  | or make a false entry in a record with the intent to obstruct the proper administration of a matter

10 | within the jurisdiction of the United States Coast Guard, in violation of Title 18, United States

11 | Code, Section 1519, all in violation of Title 18, United States Code, Section 371.

12 |   Count Two: Knowingly and willfully making and using a false writing or

13 | document in violation of Title 18, United States Code, Section 1001.

14 |       (2)   Information

15 |   Count One (*M/T Uranus*), Count Two (*M/T Overseas Shirley*), Count Three (*M/T

16 | Overseas Shirley*) and Count Four  (*M/T Pacific Sapphire*): Knowingly and willfully making and

17 | using a false writing or document in violation of Title 18, United States Code, Section 1001.

18 |       (3)   Additional Counts. Defendant and the government agree that they will, at

19 | the time of the change of plea and Rule 11 hearing in the Eastern District of Texas with respect

20 | to the above specified charges, jointly request the Court to issue an Order to stay Counts Five,

21 | Six and Seven of the Information filed in the Eastern District of Texas (*M/V Pacific Ruby*)

22 | (knowingly and willfully making and using a false writing or document in violation of Title 18,

23 | United States Code, Section 1001) pending the final resolution of government's appeal of the

24 | District Court's Order dated December 4, 2006, in that matter.  In the event the District Court's

25 | Order dated December 4, 2006, dismissing Counts Three through Ten of the Second Superceding

26 | Indictment is upheld on appeal or in the event the government dismisses the referenced appeal,

27 | the Defendant agrees to enter pleas of guilty to Counts Five, Six and Seven of the referenced

28 | Information.  In the event the referenced District Court's Order is overturned on appeal and

1    Counts Three through Ten of the Second Superceding Indictment are ordered to be reinstated,

2    the Defendant agrees that, following the return of the mandate to the District Court, Defendant

3    will enter pleas of guilty to Counts Five, Eight and Ten of the Second Superceding Indictment.

4    In the event Counts Three through Ten of the Second Superceding Indictment are reinstated, in

5    consideration of Defendant's agreement to plead guilty to Counts Five, Eight and Ten of the

6    Second Superceding Indictment and the other promises made by the Defendant in this

7    Agreement, the United States agrees to move for the dismissal of Counts Three, Four, Six, Seven

8    and Nine of the Second Superseding Indictment as to the Defendant and Counts Five, Six and

9    Seven of the referenced Information following the imposition of sentence by the Court.

10    3.    Maximum Penalties.  Defendant understands and agrees that the statutory

11    penalties applicable to a corporate defendant for each felony count of the offenses to which it is

12    entering a plea of guilty are a maximum fine of either Five Hundred Thousand Dollars

13    ($500,000.00), or twice the gross gain or loss resulting from the unlawful conduct, pursuant to

14    18 U.S.C. § 3571(c) and (d), a term of probation of five (5) years, pursuant to 18 U.S.C. §

15    3561(c)(1), and a special assessment of Four Hundred Dollars ($400.00), pursuant to 18 U.S.C. §

16    3013(a)(2)(B). Defendant understands that, in addition to any other penalty, the Court may order

17    the payment of restitution to any victim of the offenses pursuant to the provisions of Title 18,

18    United States Code, Section 3663.

19    4.    Rights Waived by Pleading Guilty.  Through its authorized representatives,

20    Defendant knowingly and voluntarily waives the following rights through its guilty pleas: (a) the

21    right to plead not guilty, and to persist in a plea of not guilty; (b) the right to a speedy and public

22    trial before a jury; (c) the right to the effective assistance of counsel at trial; (d) the right to be

23    presumed innocent until guilt has been established at trial, beyond a reasonable doubt; (e) the

24    right to confront and cross-examine witnesses at trial; (f) the right to compel or subpoena

25    witnesses to appear on Defendant's behalf at trial; (g) the right to testify or to remain silent at

26    trial, at which trial such silence could not be used against Defendant; and (h) the right to appeal a

27    finding of guilt or any pretrial rulings.

28    5.    Applicability of Sentencing Guidelines.  Defendant understands and

1  acknowledges that, at sentencing, the Court is required to consider the United States Sentencing
2  Guidelines, together with the other sentencing goals set forth in Title 18, United States Code,
3  Section 3553(a). Defendant understands and acknowledges that the United States Sentencing
4  Guidelines, including Chapter Eight that provide guidance for the sentencing of corporate
5  defendants, must be considered by the Court, except that pursuant to USSG §§ 8C2.1 and
6  8C2.10, the United States Sentencing Guidelines which pertain to the sentencing of
7  organizations do not determine the fine range in cases involving environmental crimes, including
8  the making of false statements, the use of false writings or efforts to obstruct justice in order to
9  conceal environmental crimes. Instead, the fine is to be determined under 18 U.S.C. §§ 3553 and
10  3571. All other sections of Chapter Eight of the Sentencing Guidelines that are applicable to
11  corporate defendants are applicable to this case, including provisions for probation and
12  community service.

13      6.      Sentencing Agreement. Pursuant to Rule 11(c)(1)(C) of the Federal Rule of
14  Criminal Procedure, the government and Defendant agree that the sentence to be imposed by the
15  Court should be as follows:

16      A.      Criminal Fine: Defendant shall pay a total aggregate criminal fine in the amount
17  of Twenty Seven Million Eight Hundred Thousand Dollars ($27,800,000.00). Defendant and the
18  United States agree that the sentence of a fine should be imposed in the manner described in
19  paragraph 7 below.

20      B.      Mandatory Special Assessment: Defendant shall pay a special assessment for
21  each count of conviction for a total aggregate special penalty amount of Thirteen Thousand Two
22  Hundred Dollars ($13,200.00). The specific special penalty assessment is set forth in paragraph
23  7 below.

24      C.      Community Service: Defendant shall make organizational community service
25  payments in the total amount of Nine Million Two Hundred Thousand Dollars ($9,200,000.00)
26  pursuant to §8B1.3 of the Federal Sentencing Guidelines and in furtherance of satisfying the
27  sentencing principles provided for under 18 U.S.C. § 3553(a). Defendant and the government
28  agree that the organizational community service agreed to in this plea agreement shall be divided

1   among the individual districts in the manner described in paragraph 7 below and that the

2   payments will be made on the days of the respective sentencing hearings. The community

3   service payments will be made to various funds and foundations, including the National Park

4   Foundation or the National Fish and Wildlife Foundation. The National Park Foundation

5   ("NPF") is a charitable and nonprofit corporation established pursuant to16 U.S.C. §§ 19e-19o.

6   It was established to encourage "private gifts of real and personal property" for the benefit of the

7   National Park Service in order "to further the conservation of natural, scenic, historic, scientific,

8   educational, inspirational, or recreational resources for future generations of Americans." Id. §

9   19e. The NPF is empowered to "do any and all lawful acts necessary or appropriate to its

10   purposes," including acceptance and administration of any "gifts, devises, or bequests." Id.

11   §19g, 19j. The National Fish and Wildlife Foundation (the "NFWF") is a charitable and

12   nonprofit corporation established pursuant to 16 U.S.C. §§ 3701-3709. Its purposes include the

13   acceptance and administration of "private gifts of property for the benefit of, or in connection

14   with, the activities and services of the United States Fish and Wildlife Service," and the

15   performance of "such other activities as will further the conservation and management of the

16   fish, wildlife, and plant resources of the United States, and its territories and possessions for

17   present and future generations of Americans." Id. § 3701(b)(1),(2). The NFWF is empowered to

18   "do any and all acts necessary and proper to carry out" these purposes, including, specifically,

19   solicitation, acceptance, and administration of "any gift, devise or bequest . . . of real or personal

20   property." Id. § 3703(c)(1),(7). Because the community service payments are designated as

21   community service by an organization, Defendant further agrees that it will not seek any

22   reduction in its tax obligations as a result of these community service payments. In addition,

23   since these payments constitute community service, Defendant will not characterize, publicize or

24   refer to these community service payments as voluntary donations or contributions.

25      D.    Payments: Defendant further agrees that if the terms of this Rule 11(c)(1)(C) Plea

26   Agreement are accepted by the Court, the monetary penalty to be imposed, including the special

27   assessments, fines, community service and the payment to an escrow account shall be paid on the

28   day of sentencing. Payment is to be made in the form of a check payable to "United States

1   District Court Clerk" except that the community service payments shall be directed to the funds
2   as set forth in paragraph 7. At sentencing and upon payment in full of all monetary amounts set
3   forth herein, Defendant may move to be relieved of any requirement to provide regular financial
4   reports to the Office of Probation. The United States agrees to take no position regarding any
5   such motion.

6        E.      Probation: Defendant will be placed on organizational probation for a period of
7   three (3) years from the date of sentencing pursuant to 18 U.S.C. § 3561(c)(1) and USSG §§
8   8D1.1 and 8D1.2. The terms of probation shall be:

9        (1)     No Further Violations. Defendant agrees that it shall commit no further
10  violations of federal, state or local law, including those laws and regulations for which primary
11  enforcement has been delegated to state authorities, and shall conduct all its operations in
12  accordance with the MARPOL Protocol and the environmental laws of the United States.

13       (2)     Payments. Payment in full of the monetary amounts set forth herein including all
14  special assessments, fines and restitution, and community service.

15       (3)     Environmental Compliance Plan. Defendant agrees to fund and implement the
16  Environmental Compliance Plan ("ECP"), attached hereto as Attachment B, during its term of
17  probation, consistent with sentencing policies set forth in USSG § 8D1.4.

18       F.      Recommendation For Transfer. Pursuant to Title 18, United States Code,
19  Section 3605, the parties agree to recommend that after imposition of sentencing in the Eastern
20  District of Texas, including the remedial conditions of probation, *i.e.*, the Environmental
21  Compliance Plan referenced in paragraph 6(e)(3) above, supervision of probation of those cases
22  be transferred to the United States District Court for the District of Massachusetts. The parties
23  further agree that any violations of probation shall be brought before the United States District
24  Court for the District of Massachusetts.

25       7.      Imposition and Allocation of the Fine, Special Assessment and Community
26  Service. Defendant shall pay the following amounts relating to the violations in each of the
27  identified districts:

28              A.      Central District of California

1    (1)    The Defendant shall pay a total criminal fine in the amount of Two Million One
2 Hundred Thousand Dollars ($2,100,000.00), allocated by counts as follows: Counts One and
3 Two, Eight Hundred Thousand Dollars ($800,000.00) per count; and Count Three, Five Hundred
4 Thousand Dollars ($500,000.00).

5    (2)    Pursuant to Title 18, United States Code, Section 3013(a)(2)(B), the Defendant
6 shall pay a total mandatory assessment of One Thousand Two Hundred Dollars ($1,200.00) for
7 the three counts charged in the Information.

8    (3)    In furtherance of the sentencing principals provided under Section 8B1.3 of the
9 Federal Sentencing Guidelines and Title 18, United States Code, Section 3553(a), the Defendant
10 shall make a Community Service payment of Nine Hundred Thousand Dollars ($900,000.00) for
11 the explicit goal of funding environmental projects and initiatives designed for the benefit,
12 preservation, and restoration of the environment and ecosystems in the Central District of
13 California, including those dependant on or impacting the waters along the counties of Los
14 Angeles, Orange, Ventura, Santa Barbara, and San Luis Obispo, as well as those along the
15 Channel Islands. These projects and initiatives should include, but not be limited to, the
16 following: monitoring, study, restoration, and preservation of fish, wildlife, and plant resources;
17 monitoring, study, clean up, remediation, sampling, and analysis of pollution and other threats to
18 the environment and ecosystem; research, study, planning, repair, maintenance, education, and
19 public outreach relating to the environment and ecosystem; and law enforcement of
20 environmental and wildlife protection laws. Accordingly, the $900,000.00 shall be paid as
21 follows:

22    i.    Five Hundred Thousand Dollars ($500,000.00) payable to the NPF and to
23 be used by the NPF, or by a non-profit organization selected by the NPF, following issuance of a
24 request for proposals and review of such proposals, to support the Channel Islands National Park
25 (the "Channel Islands NP") headquartered in Ventura, California. Specifically, the monies shall
26 be deposited in the Channel Islands Law Enforcement Fund for the primary purpose of
27 supporting and implementing the enforcement of environmental, natural resource, and marine
28 wildlife protection laws within the Channel Islands NP, including, but not limited to, the

PLEA AGREEMENT/
UNITED STATES OF AMERICA v. OSG - 10

1   following: staffing; the purchase of communication and defensive equipment and patrol vessels

2   and vehicles; training; response to and clean up of pollution spills or threats of pollution;

3   preservation and/or construction of facilities; collection, research, analysis, study, preservation,

4   storage, display, and protection of historical, cultural, natural, and marine and island resources

5   and wildlife; and law enforcement and patrol operations, such as enhanced enforcement of

6   Marine Protected Areas. The receipt, management, and expenditure of these funds shall be

7   accounted for to Congress in annual reports to Congress in annual reports required by 16 U.S.C.

8   §19n.

9              ii.       Two Hundred Forty Thousand Dollars ($240,000.00) payable to the

10   NFWF to be used by the NFWF, or by a non-profit organization selected by the NFWF,

11   following issuance of a request for proposals and review of such proposal, to support the efforts

12   of the United States Department of the Interior, Bureau of Land Management ("USDOI-BLM"),

13   and non-profit entities that specifically support the mission and objectives of the USDOI-BLM,

14   to preserve and protect the historical, cultural, natural, and marine resources and wildlife located

15   at or adjacent to historic structures, facilities, and monuments, including light houses and

16   stations, either located on USDOI-BLM lands or administered and controlled by the USDOI-

17   BLM, as well as the enforcement of the archeological, environmental and marine wildlife

18   protection laws relating to those resources. Specifically, such monies shall be used within the

19   Central District of California to support the following types of projects, among other things:

20   preservation and/or construction of facilities; collection, research, analysis, study, preservation,

21   storage, display, and protection of historical, cultural, natural, and marine resources and wildlife;

22   training, educational, interpretive, and public outreach programs; and law enforcement officers,

23   staff, and equipment needed in the preservation and protection of those resources. The receipt,

24   management, and expenditure of these funds shall be accounted for to Congress in annual reports

25   required by 16 U.S.C. 3706(b).

26              iii.      One Hundred Sixty Thousand Dollars ($160,000.00) payable to the NFWF

27   to support the Pilot Program for Satellite Surveillance Technology as more fully described in

28   paragraph 7(D)(3)(ii), *infra*.

B.     Northern District of California

(1)     The Defendant shall pay a criminal fine in the amount of Five Hundred Thousand Dollars ($500,000.00) for Count One.

(2)     Pursuant to Title 18, United States Code, Section 3013(a)(2)(B), the Defendant shall pay a mandatory assessment of Four Hundred Dollars ($400.00) for the one count charged in the Information.

(3)     Pursuant to Section 8B1.3 of the Federal Sentencing Guidelines and in furtherance of the sentencing principles provided for under 18 U.S.C. Section 3553(a), the Defendant shall make a Community Service payment of Five Hundred Thousand Dollars ($500,000.00) for the explicit goal of funding environmental projects and initiatives designed for the benefit, preservation, and restoration of the environment and ecosystems in the Northern District of California, including those dependant on or impacting the waters along the counties of Monterey, Santa Cruz, San Mateo, San Francisco, Sonoma, Mendocino, Humboldt, and Del Norte, as well as those protected as National Marine Sanctuaries, including the Monterey Bay, the Gulf of the Farallones, and the Cordell Banks. These projects and initiatives should include, but not be limited to, the following: monitoring, study, restoration, and preservation of fish, wildlife, and plant resources; monitoring, study, clean up, remediation, sampling, and analysis of pollution and other threats to the environment and ecosystem; research, study, planning, repair, maintenance, education, and public outreach relating to the environment and ecosystem; and law enforcement of environmental and wildlife protection laws. Accordingly, the $ 500,000.00 should be paid as follows:

i.     Four Hundred Forty Thousands Dollars ($440,000.00) payable to the NFWF. The monies shall be used for the preservation, restoration, and general protection of marine resources and ecosystems located in the Northern District of California, including, but not limited to the following three National Marine Sanctuaries: the Monterey Bay, the Gulf of the Farallones, and the Cordell Banks. Monies may be used for projects designed to protect and restore populations of sea birds, including the Cassin's auklet; fisheries, including native coho salmon; and marine mammals, including fur seals. Monies may also be used for the purchase of

PLEA AGREEMENT/
UNITED STATES OF AMERICA v. OSG - 12

1 | communication and defensive equipment and patrol vessels and vehicles; training; response to

2 | and clean up of pollution spills or threats of pollution; preservation and/or construction of

3 | facilities; collection, research, analysis, study, preservation, storage, display, and protection of

4 | historical, cultural, natural, and marine and island resources and wildlife; and law enforcement

5 | and patrol operations, such as enhanced enforcement of Marine Protected Areas; and accounted

6 | for to Congress in annual reports required by 16 U.S.C. §19n.

7 |             ii.   Sixty Thousand Dollars ($60,000.00) payable to the NFWF to support the

8 | Pilot Program for Satellite Surveillance Technology as more fully described in paragraph

9 | 7(D)(3)(ii), *infra*.

10 |     C.    District of Maine

11 |        (1)    The Defendant shall pay a total criminal fine in the amount of Seven Million

12 | Four Hundred Thousand Dollars ($7,400,000.00), allocated by counts as follows: Count One,

13 | One Million Six Hundred Thousand Dollars ($1,600,000.00); Counts Two through Seven, Eight

14 | Hundred Thousand Dollars ($800,000.00) per count; and Count Eight and Count Nine, Five

15 | Hundred Thousand Dollars ($500,000.00) per count.

16 |        (2)    Pursuant to Title 18, United States Code, Section 3013(a)(2)(B), the Defendant

17 | shall pay a total mandatory assessment of Three Thousand Six Hundred Dollars ($3,600.00) for

18 | the nine counts charged in the Information.

19 |        (3)    In furtherance of the sentencing principals provided under Section 8B1.3 of the

20 | Federal Sentencing Guidelines and Title 18, United States Code, Section 3553(a), the Defendant

21 | shall make a Community Service payment of Two Million Six Hundred Thousand Dollars

22 | ($2,600,000.00).  The $ 2,600,000.00 shall be paid as follows:

23 |             i.    Two Million Sixty Thousand Dollars ($2,060,000.00) payable to the

24 | NFWF, to be used by the NFWF, or by a non-profit organization selected by the NFWF

25 | following issuance of a request for proposals and review of such proposals, subject to review and

26 | input from the United States Coast Guard, First District, for funding nonprofit organizations,

27 | educational institutions, and governmental entities which provide marine environmental

28 | education in Maine, and to nonprofit organizations, educational institutions, and governmental

1   entities that are engaged in the research and study, and the conservation of marine and aquatic
2   resources in the coastal waters of Maine and the Gulf of Maine.  Such funding may include
3   projects involving coastal wetlands and upland buffers, rivers and riparian corridors that support
4   Maine's native sea run fish, lands and waters that support coastal federally endangered and
5   threatened species, and lands that support Maine's coastal national wildlife refuges.  The receipt,
6   management, and expenditure of these funds shall be accounted for to Congress in annual reports
7   required by 16 U.S.C. Section 3706(b).

8              ii.     Five Hundred Forty Thousand Dollars ($540,000.00) payable to the
9   NFWF to support the Pilot Program for Satellite Surveillance Technology as more fully
10  described in paragraph 7(D)(3)(ii), *infra*.

11          D.     District of Massachusetts

12          (1)     The Defendant shall pay a total criminal fine in the amount of Seven Million
13  Seven Hundred Thousand Dollars ($7,700,000.00) allocated by count as follows: Counts One
14  and Five, One Million Six Hundred Thousand Dollars ($1,600,000.00) per count; Counts Two,
15  Three,  Four, Six and Seven, Eight Hundred Thousand Dollars ($800,000.00) per count; and
16  Count Eight, Five Hundred Thousand Dollars ($500,000.00).

17          (2)     Pursuant to Title 18, United States Code, Section 3013(a)(2)(B), the Defendant
18  shall pay a total mandatory assessment of Three Thousand Six Hundred Dollars ($3,600.00) for
19  the nine counts charged in the Information.

20          (3)     In furtherance of the sentencing principals provided under Section 8B1.3 of the
21  Federal Sentencing Guidelines and Title 18,United States Code, Section 3553(a), the Defendant
22  shall make a Community Service payment of Two Million Three Hundred Thousand Dollars
23  ($2,300,000.00). The $2,300,000 shall be paid as follows:

24              i.     One Million Seven Hundred Sixty Thousand Dollars ($1,760,000.00)
25  payable to the North American Wetlands Conservation Act Fund (the "NAWCAF"), established
26  pursuant to 16 U.S.C. §§ 4401 - 4412, in order "to protect, enhance, restore, and manage . . .
27  wetland ecosystems and habitats associated with wetland ecosystems and other fish and wildlife
28  in North America." Id. at § 4401(b)(1). These funds shall be used by the NAWCAF, or by non-

PLEA AGREEMENT/
UNITED STATES OF AMERICA v. OSG - 14

1 profit organizations selected by the NAWCAF following the issuance of a request for proposals
2 and review of such proposals, exclusively for qualified coastal wetlands conservation projects
3 within the District of Massachusetts.

4              ii.     Five Hundred Forty Thousand Dollars ($540,000.00) payable to the
5 NFWF to be used by the NFWF, or by a non-profit organization selected by the NFWF
6 following the issuance of a request for proposals and review of such proposals, to fund the Pilot
7 Program for Satellite Surveillance (the "Pilot Program"). Use of these funds shall be subject to
8 review and input from the United States Coast Guard. The Pilot Program will lease satellite time
9 to monitor the conduct of vessels within the United States Exclusive Economic Zone ("EEZ")
10 and utilize this satellite technology to improve environmental compliance within the EEZ in
11 order to study the cost-effectiveness and feasibility of more permanent use of such methods.
12 (The total amount to be allocated to the Pilot Program under this Agreement shall be Two
13 Million Dollars ($2,000,000.00), based on contributions of a portion the Community Service
14 payments received by each district under this agreement and that shall be specifically designated
15 for the Pilot Program according to the terms of this agreement.)

16      E.      Eastern District of North Carolina

17      (1)     The Defendant shall pay a total criminal fine in the amount of Two Million Four
18 Hundred Thousand Dollars ($2,400,000.00) allocated by count as follows: Counts One through
19 Three, Eight Hundred Thousand Dollars ($800,000.00) per count.

20      (2)     Pursuant to Title 18, United States Code, Section 3013(a)(2)(B), the Defendant
21 shall pay a total mandatory assessment of One Thousand Two Hundred Dollars ($1,200.00) for
22 the three counts charged in the Information.

23      (3)     In furtherance of the sentencing principals provided under Section 8B1.3 of the
24 Federal Sentencing Guidelines and Title 18, United States Code, Section 3553(a), the Defendant
25 shall make a Community Service payment of Six Hundred Thousand Dollars ($600,000.00). The
26 $600,000.00 shall be paid as follows:

27              i.      Four Hundred Forty Thousand ($440,000.00) payable to the NFWF to be
28 used by the NFWF, or by a non-profit organization selected by the NFWF following issuance of

1 │ a request for proposals and review of such proposals, subject to the following:

2 │             a.      A portion of the monies, but not less than Two Hundred Thousand

3 │ Dollars ($200,000.00), shall be used for the preservation, restoration, and general protection of

4 │ marine wildlife, resources, and ecosystems located in the Eastern District of North Carolina.

5 │ These projects should include, but not be limited to, projects designed to protect and restore

6 │ populations of sea birds, fisheries, wildlife, and marine mammals, in or near the coastal waters

7 │ and intercoastal waterways of the Eastern District of North Carolina. Monies may also be used

8 │ for the purchase of communication and defensive equipment and patrol vessels and vehicles;

9 │ training; response to and clean up of pollution spills or threats of pollution; preservation and/or

10 │ construction of facilities; collection, research, analysis, study, preservation, storage, display, and

11 │ protection of historical, cultural, natural, and marine and island resources and wildlife; and law

12 │ enforcement and patrol operations. The receipt, management, and expenditure of funds shall be

13 │ accounted for to Congress in annual reports required by 16 U.S.C. §3706(b).

14 │             b.      A portion of the monies, but not less than Two Hundred Thousand

15 │ Dollars ($200,000.00), should be used, subject to review and input from the United States Coast

16 │ Guard, Assistant Commandant for Prevention, for funding of the specific projects described

17 │ hereinafter, related to the prevention of violations of MARPOL Annex I: I) A study of ship

18 │ design aspects of waste stream management. The focus of the study shall be on machinery space

19 │ derived wastes and potential methods for ship designers to improve the ability of vessels to

20 │ process their wastes legally; and ii) A study of the effectiveness of existing Oily Water Separator

21 │ technology. The focus of the study shall be on the design and practical operational aspects of

22 │ existing technologies used to process machinery space waste streams in order to evaluate their

23 │ effectiveness. These studies shall be performed by a qualified research or education institute

24 │ based in the state of North Carolina. However, only in the event that no qualified research or

25 │ education institute based in the State of North Carolina is available, then the NFWF, subject to

26 │ review and input from the United States Coast Guard, Assistant Commandant for Prevention,

27 │ may make these funds available, on similar terms and conditions, to other qualified research or

28 │ education institutes.

1               ii.     One Hundred Sixty Thousand Dollars ($160,000.00) payable to the NFWF

2 to support the Pilot Program for Satellite Surveillance Technology as more fully described in

3 paragraph 7(D)(3)(ii), *supra*.

4         F.     Eastern District of Texas

5      (1)     The Defendant shall pay a total criminal fine in the amount of Two Million Four

6 Hundred Thousand Dollars ($2,400,000.00) for the two counts in the Second Superseding

7 Indictment to which the Defendant is pleading guilty, allocated by count as follows: Count One,

8 One Million Six Hundred Thousand Dollars ($1,600,000.00); and Count Two, Eight Hundred

9 Thousand Dollars ($800,000.00). The Defendant shall pay a total criminal fine in the amount of

10 Two Million Nine Hundred Thousand Dollars ($2,900,000.00) for the four counts in

11 Information, allocated by count as follows: Counts One, Two, and Three, Eight Hundred

12 Thousand Dollars ($800,000.00) per count; and Count Four, Five Hundred Thousand Dollars

13 ($500,000.00).

14      (2)     Pursuant to Title 18, United States Code, Section 3013(a)(2)(B), the Defendant

15 shall pay a total mandatory assessment of Two Thousand Four Hundred Dollars ($2,400.00) for

16 the two (2) counts in the Second Superseding Indictment and for the four (4) counts in the

17 Information to which the Defendant is pleading guilty.

18      (3)     In furtherance of the sentencing principals provided under Section 8B1.3 of the

19 Federal Sentencing Guidelines and Title 18, United States Code, Section 3553(a), the Defendant

20 shall make Community Service payments totaling One Million Seven Hundred Thousand Dollars

21 ($1,700,000.00) for the explicit goal of funding environmental projects and initiatives designed

22 for the benefit, preservation, and restoration of the environment and ecosystems in the Eastern

23 District of Texas, including those dependent on or impacting the waters along the counties of

24 Jefferson, Orange, Hardin, Liberty, Tyler, Jasper and Newton. These projects and initiatives

25 should include, but not be limited to the following: monitoring, study, restoration, and

26 preservation of fish, wildlife, and plant resources; monitoring, study, clean up, remediation,

27 sampling, and analysis of pollution and other threats to the environment and ecosystem;

28 research, study, planning; repair, maintenance, education, and public outreach relating to the

1 | environment and ecosystem; and law enforcement of environmental and wildlife protection laws.

2 | Accordingly, One Million Seven Hundred Thousand Dollars ($1,700,000.00) shall be paid as

3 | follows:

4 |          i.       One Million One Hundred and Sixty Thousand Dollars ($1,160,000.00) to be

5 | paid to the NPF to be used to support the goals and objectives listed in paragraph 3, *supra*, and

6 | apportioned as follows: a) Two Hundred Ninety Thousand Dollars ($290,000.00), less

7 | appropriate and necessary administrative expenses, to be designated for use by The

8 | Environmental Learning and Research Center, a non-profit organization, for the primary purpose

9 | of supporting and implementing the joining of outdoor learning and research entities that provide

10 | educational programs to diverse populations and, by doing so, encourages an understanding of

11 | the environment, research, outdoor recreation, and conservation, and for staffing, facilities and

12 | structures for public enjoyment, teaching environmental understanding, response to and clean up

13 | of pollution spills or threats or pollution, and protection of historical, cultural, natural and marine

14 | and island resources and wildlife; and b) Eight Hundred Seventy Thousand Dollars

15 | ($870,000.00), less appropriate and necessary administrative expenses, to be designated for use

16 | by the Conservation Fund, a non-profit organization, to further the acquisition of land to be

17 | added to the Big Thicket National Preserve, Beaumont Unit addition, the Village Creek addition

18 | and the Cypress Tupelo Swamp project, and used for the restoration and the protection of the

19 | historical, cultural, and natural embodiment of the land and water resources within the Big

20 | Thicket National Preserve, including wetlands, the response to and clean up of pollution spills

21 | and threats of pollution, and the support and implementation of the enforcement of

22 | environmental, natural resource, and marine wildlife protection laws within the Big Thicket

23 | National Preserve. The receipt, management and expenditure of these funds shall be accounted

24 | for to Congress in annual reports required by 16 U.S.C. §19n.

25 |          ii.       Five Hundred Forty Thousand Dollars ($540,000.00) payable to the NFWF

26 | to support the Pilot Program for Satellite Surveillance Technology as more fully described in

27 | paragraph 7(D)(3)(ii), *supra*.

28 |       (4)       On the date of the change of plea hearing and Rule 11 hearing in the Eastern

1  District of Texas with respect to the charges specified in paragraph 2(F)(1) (Counts One and

2  Two of the Second Superceding Indictment) and 2(F)(2) (Counts One through Four of the

3  Information filed with this Agreement), *supra*, the Defendant also agrees to provide a check

4  payable to the Clerk of the Court for the Eastern District of Texas in the amount of Three Million

5  Dollars ($3,000,000.00) for deposit in an interest bearing escrow account. These funds shall

6  remain in the escrow account until the date of sentencing with respect to the guilty pleas to be

7  entered pursuant to the provisions of paragraph 2(F)(3) (guilty pleas to be entered following

8  resolution of appeal), *supra*. With respect to those guilty pleas, Defendant shall pay a total

9  criminal fine in the amount of Two Million Four Hundred Thousand Dollars ($2,400,000.00)

10  allocated by count as follows: Counts Five, Eight and Ten of the Second Superceding

11  Indictment, in the event those counts are ordered reinstated, or, in the event the dismissed counts

12  of the Second Superceding Indictment are not reinstated, Counts Five, Six and Seven of the

13  Information filed with this Agreement in the Eastern District of Texas, Eight Hundred Thousand

14  Dollars ($800,000.00) per count. Pursuant to Title 18, United States Code, Section

15  3013(a)(2)(B), the Defendant shall pay a total mandatory assessment of One Thousand Two

16  Hundred Dollars ($1,200.00) for the three (3) additional counts. In addition, in furtherance of

17  the sentencing principals provided under Section 8B1.3 of the Federal Sentencing Guidelines

18  and Title 18, United States Code, Section 3553(a), and in connection with the sentencing for

19  those three (3) additional counts, the Defendant shall make Community Service payments

20  totaling Six Hundred Thousand Dollars ($600,000.00), plus all interest accrued in the escrow

21  account, for the explicit goal of funding the environmental projects and initiatives described in

22  paragraph 7(F)(3), *supra*. Prior to the date of the sentencing for the three (3) additional counts,

23  the government shall file a recommendation with the Court in the Eastern District of Texas

24  regarding the apportionment of the specified Community Service payments among the identified

25  projects.

26      8.    Application of the Agreement. This Agreement shall bind Defendant and its

27  subsidiaries, including all subsidiaries that technically manage and/or man vessels, including but

28  not limited to, OSG Ship Management, Inc., OSG Ship Management (UK) Ltd., OSG Ship

1  Management (GR) Ltd., Maritrans Operating Company, L.P. and all successors-in-interest, if

2  applicable, and all successors and assigns. Defendant shall provide to each undersigned

3  prosecuting office with immediate notice of the following: any corporate name changes; any

4  purchase or sale of vessels; any purchase, sale or reorganization of ship management companies;

5  or any other change impacting upon or affecting this Plea Agreement and the ECP. No change

6  in name, change in corporate or individual control, business reorganization, change in

7  ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter

8  Defendant's responsibilities under this Plea Agreement. Defendant understands and agrees that

9  it shall not engage in any action to seek to avoid the obligations and conditions set forth in this

10  Plea Agreement.

11       9.    Cooperation. As part of this Plea Agreement, Defendant agrees that it will

12  provide full and complete cooperation in any further investigation and/or prosecution of

13  individuals in connection with potential violations of MARPOL, the Act to Prevent Pollution

14  from Ships, false statements and related acts of obstruction involving vessels technically

15  managed or manned by Defendant or its subsidiaries.

16  Such cooperation shall include:

17      A.    During the period of probation, and at all reasonable times and with reasonable
prior notice by the government as practicable, regarding the subject matters and
18          vessels covered in the Informations, Second Superseding Indictment and Joint
Factual Statement, provide full access to vessels technically managed or manned
19          by Defendant or its subsidiaries while in U.S. ports or waters, as well as all
records related to the vessel, current and former crew, and shore-side
20          management. Such access shall include: (1) access to, and production and
authentication of records; (2) access to engine room equipment for inspection and
21          photographs; (3) access to ship-board and shore-side computers. Defendant
further promises to provide reports on the location of employment for all its
22          personnel upon request.

23      B.    Regarding the subject matters and vessels covered in the Informations, Second
Superseding Indictment and Joint Factual Statement, make the current crew
24          members and shore-side personnel available in the United States to participate in
judicial proceedings, and take all reasonable efforts to ensure that its officers,
25          employees, consultants, attorneys, vendors and experts cooperate with the
investigation and disclose all information, including advising them that they are
26          encouraged to cooperate by agreeing to provide information to the Government,
being interviewed by Government agents or attorneys, and testifying in official
27          proceedings.

28      C.    Furnish, and pay all travel related costs for witnesses employed by Defendant and
requested by the United States in the Eastern District of Texas in the matter

captioned, <u>United States v. Kun Jun Jho and Overseas Shipholding Group, Inc.</u>, Criminal Number 1:06-CR-65 (Judge Heartfield).

10.    <u>Statements</u>. This Agreement does not limit the right of Defendant or the United States to advise the Court or speak at the time of sentencing or in connection with the pre-sentence investigation, consistent with the provisions set forth in this Plea Agreement and the Joint Factual Basis, and to provide the Court or the United States Probation Office with evidence of all relevant conduct and related information. The United States will advise the Court regarding the nature and extent of the Defendant's cooperation in the prosecution and investigation of this matter. But for Defendant's significant cooperation in the government's investigation, including, the self-disclosure of certain violations regarding six vessels, the limited waiver of attorney-client privileged and work product protection claims with respect to selected materials, promises of continued cooperation, and remedial and compliance measures, the United States would have sought a substantially larger criminal fine, additional criminal counts of conviction and a longer term of probation. Defendant agrees that it will not make any contrary public statements regarding this agreement or the attachments hereto.

11.    <u>Non-Prosecution of Additional Offenses</u>.

As part of this Agreement and solely because of the promises made by Defendant in this Agreement, the government agrees to forgo additional criminal prosecution in the Central District of California, the Northern District of California, the District of Maine, the District of Massachusetts, the Eastern District of North Carolina, and the Eastern District of Texas against Defendant and its subsidiaries, including all subsidiaries that technically manage and/or man vessels, for any other environmental offenses or related offenses, including but not limited to, the discharge of oil, the failure to maintain accurate records, false statements or related acts of obstruction or conspiracy, before the date of this Agreement and which are known to the government at the time of the signing of this Agreement.

Defendant understands and agrees that neither this paragraph nor this Plea Agreement limits the prosecuting authority of any sections or divisions of the Department of Justice, other that the Environmental Crimes Section, including the U.S. Attorney of any other judicial district,

1    or any other federal, state or local regulatory or prosecuting authorities. Furthermore, this Plea

2    Agreement does not provide or promise any waiver of any civil or administrative actions,

3    sanctions, or penalties that may apply, including but not limited to: fines, penalties, claims for

4    damages to natural resources, suspension, debarment, listing to restrict rights and opportunities

5    of Defendant to contract with or receive assistance, loans, and benefits from United States

6    agencies, licensing, injunctive relief, or remedial action to comply with any applicable regulatory

7    requirement. This Plea Agreement applies only to crimes committed by the Defendant and has

8    no effect on any proceedings against any entity or individual not expressly mentioned herein,

9    including the actual or potential criminal liability of any individuals.

10        12.    Breach of the Agreement. If the government determines that Defendant has failed

11   to comply with any provision of this Agreement, or has committed any crime within the

12   jurisdiction of the United States during the pendency of this Agreement, the government may, at

13   its sole option, be released from its commitments under this Agreement in their entirety by

14   notifying Defendant, through counsel or otherwise, in writing. The government may also pursue

15   all remedies available under the law, irrespective of whether it elects to be released from its

16   commitments under this Agreement. Defendant recognizes that no such breach by it of any

17   obligation under this Agreement shall give rise to grounds for withdrawal of its guilty plea.

18   Defendant understands that should any such breach of this agreement occur, the government will

19   have the right to use against Defendant before any grand jury, at any trial, hearing or for

20   sentencing purposes, any statements made by its employees and agents, and any information,

21   materials, documents or objects provided by Defendant to the government pursuant to this

22   agreement without any limitation. In this regard, Defendant hereby waives any defense to any

23   charges which it might otherwise have under any statute of limitations, preindictment delay, or

24   the Speedy Trial Act for ninety (90) days following any breach of the agreement, except to the

25   extent that such defenses existed as of the date of the signing of this Agreement.

26        13.    Probation Office Not Bound By Agreement. Defendant understands that the

27   sentencing disposition agreed upon by the parties is not binding upon the United States

28   Probation Office.

PLEA AGREEMENT/
UNITED STATES OF AMERICA v. OSG - 22

1  acknowledges that it has entered into this Plea Agreement freely and voluntarily and that they

2  have been fully advised by counsel, and that no threats or promises were made to induce it to

3  enter the guilty pleas called for by this Plea Agreement.

4        19.    Completeness of Agreement. This Agreement is the complete and only agreement

5  between the parties. No promises, agreements or conditions have been entered into other than

6  those set forth in this Agreement. This Agreement supersedes prior understandings, whether

7  written or oral. This Agreement cannot be modified other than in a written memorandum signed

8  by the parties or on the record in court.

9                         AGREED TO AND ACCEPTED,

11                         SUE ELLEN WOOLDRIDGE
                               ASSISTANT ATTORNEY GENERAL

12                         ENVR. & NAT. RESOURCES DIV.
                             U.S. DEPARTMENT OF JUSTICE

13  Date: 12/15/06        BY:

14                         GREGORY F. LINSIN
                         SPECIAL LITIGATION COUNSEL

15                         ENVIRONMENTAL CRIMES SECTION

16  Date: 10/15/06        BY:

17                         RICHARD A. UDELL
                         SENIOR TRIAL ATTORNEY

18                         ENVIRONMENTAL CRIMES SECTION
  Date: 12/15/06        BY:

19                         LANA N. PETTUS

20                         TRIAL ATTORNEY
                         ENVIRONMENTAL CRIMES SECTION

21  Date: 12/15/06        BY:

22                         JOSEPH A. POUX
                         TRIAL ATTORNEY

23                         ENVIRONMENTAL CRIMES SECTION
  Date: 12/15/06        BY:

24                         MALINDA R. LAWRENCE
                         TRIAL ATTORNEY

25                         ENVIRONMENTAL CRIMES SECTION

27                         GEORGE S. CARDONA
                         ACTING UNITED STATES ATTORNEY

28                         CENTRAL DISTRICT OF CALIFORNIA

1   Date:  12-21-06          BY:
                                      THOMAS P. O'BRIEN
2                                     CHIEF, CRIMINAL DIVISION

3

4   Date: 12 21 06          BY:          Joseph O. Johns / duc
                                      JOSEPH O. JOHNS
5                                     CHIEF, ENVIRONMENTAL CRIMES SECTION

6

7   Date: 12 21 06          BY:
                                      DOROTHY C. KIM
8                                     ASSISTANT U.S. ATTORNEY

9
                                      KEVIN V. RYAN
10                                    UNITED STATES ATTORNEY
                                      NORTHERN DISTRICT OF CALIFORNIA
11
    Date: 12/20/06          BY:
12                                    STACEY GEIS
                                      ASSISTANT U.S. ATTORNEY
13

14                                    PAULA D. SILSBY
                                      UNITED STATES ATTORNEY
15                                    DISTRICT OF MAINE

16  Date: 12/18/06          BY:
                                      JONATHAN R. CHAPMAN
17                                    CRIMINAL CHIEF

18  Date: 12/18/06          BY:
                                      RICHARD W. MURPHY
19                                    ASSISTANT U.S. ATTORNEY

20
                                      MICHAEL J. SULLIVAN
21                                    UNITED STATES ATTORNEY
                                      DISTRICT OF MASSACHUSETTS
22
    Date:  1/11/07          BY:
23                                    JONATHAN F. MITCHELL
                                      ASSISTANT U.S. ATTORNEY
24

25                                    GEORGE E. B. HOLDING
                                      UNITED STATES ATTORNEY
26                                    EASTERN DISTRICT OF NORTH CAROLINA

27
    Date: 12/19/06          BY:
28                                    BANUMATHI RANGARAJAN
                                      ASSISTANT U.S. ATTORNEY

PLEA AGREEMENT/
UNITED STATES OF AMERICA v. OSG - 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLEA AGREEMENT/
UNITED STATES OF AMERICA v. OSG - 26

1

2

MATTHEW D. ORWIG
UNITED STATES ATTORNEY
EASTERN DISTRICT OF TEXAS

3    Date: 1/5/07          BY:

ARNOLD A. SPENCER
4                               CRIMINAL CHIEF

5

6    Date: 1-8-07          BY:

JOSEPH R. BATTE
ASSISTANT U.S. ATTORNEY

7

8    Date: 1/5/07          BY:

JOHN M. BALES
ASSISTANT U.S. ATTORNEY

9

10   As an authorized representatives of Defendant OVERSEAS SHIPHOLDING GROUP, INC.
     ("OSG"), we have read this Agreement and carefully discussed every part of it with the Board of
11   Directors of OSG and OSG's criminal defense counsel. We understand the terms of this
     Agreement and OSG voluntarily agrees to those terms. OSG's attorneys have advised us of
12   OSG's rights, of possible defenses, of the Sentencing Guideline provisions, and of the
     consequences of entering into this Plea Agreement. No promises or inducements have been
13   made to OSG other than those contained in this Plea Agreement. No one has threatened or
     forced OSG in any way to enter into this Plea Agreement. Finally, OSG is satisfied with the
14   representation of its attorneys in this matter.

15   Date: 12/15/08         BY:

ROBERT JOHNSTON
16                               SENIOR VICE PRESIDENT AND
                                 HEAD OF SHIPPING OPERATIONS
17                               OVERSEAS SHIPHOLDING GROUP, INC.

18   Date: 12/15/08         BY:

JAMES I. EDELSON
19                               GENERAL COUNSEL AND SECRETARY
                                 OVERSEAS SHIPHOLDING GROUP, INC.
20

21   We are OSG's attorneys. We have carefully discussed every part of this Agreement with the
     authorized representatives of OSG. Further, we have fully advised the authorized representatives
22   of OSG's rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the
     consequences of entering into this Agreement. To our knowledge, the decision of OSG to enter
23   into this Agreement is an informed and voluntary one.

24   Date: 12/15/08         BY:

JUDSON W. STARR, COUNSEL FOR
25                               OVERSEAS SHIPHOLDING GROUP, INC.

26   Date: 12/15/08         BY:

STEPHEN P. KYNE, COUNSEL FOR
27                               OVERSEAS SHIPHOLDING GROUP, INC.

28

PLEA AGREEMENT/
UNITED STATES OF AMERICA v. OSG - 27